## CARROLL v. ATLANTIC STEEL COMPANY.

1. Where proceedings in court for a minor by next friend, to recover damages for injuries sustained by the minor from alleged negligence of the defendant, are merely formal and are brought in the name of the minor by an attorney employed by a company which has insured the defendant against damages resulting from injuries to defendant's employees, only to effectuate a settlement alleged to have been agreed upon between the parties; and where in such case verdict and judgment for a nominal amount are taken for the plaintiff, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, a judgment rendered in pursuance of such agreement, even if by consent, is only colorab'e, and will be set aside in a proper proceeding, when its effect, if allowed to stand, would be to bar the infant's substantial rights.

2. The court erred, under the pleadings and the evidence, in awarding a nonsuit.

No. 2195.    APRIL 13, 1921.

Equitable petition. Before Judge Bell. Fulton superior court. June 2, 1920.

Clarence Carroll, suing by Odessa Carroll as his next friend, brought an equitable petition against the Atlantic Steel Company, and alleged in substance as follows: About May 13, 1918, while employed by the defendant the plaintiff was injured and damaged in the sum of $25,000, having lost his left leg through the defendant's negligence. About September 3, 1918, the plaintiff believed that he effected a valid settlement of his damages by having received a contract for permanent employment with the defendant, and continued in such belief until about May 1, 1919, when he was discharged by the defendant; and having employed counsel, he has been told that on September 3, 1918, a judgment was rendered in the city court of Atlanta in his favor as plaintiff against the defendant for the sum of $450, by which it was attempted to fully satisfy plaintiff's claim. The judgment was obtained by

fraud by the defendant and is void; and the present suit is brought for the purpose of setting aside the judgment, and for damages for the tort referred to. The fraud complained of was as follows: On May 13, 1918, the plaintiff received an injury while working for the defendant, which resulted in the amputation of his left leg. After several weeks, and after plaintiff had partially recovered from his injuries, the superintendent of the defendant sent for the mother of plaintiff, for the purpose of making a settlement. Plaintiff and his mother went to the plant of the defendant, where they met the superintendent and the insurance adjuster hereinafter referred to. A settlement was agreed upon by the superintendent and plaintiff's mother, upon the following terms: Defendant was to pay plaintiff's mother $350 in full settlement for her damages ($50 of which had already been paid), and give permanent employment to plaintiff, and an artificial leg as soon as he was fully grown. Plaintiff and his mother were then told by the superintendent to get into defendant's automobile in company with its physician and go to the office of defendant's attorney, who would pay the $300. The defendant carried insurance against loss for damages to employees, with the Travelers Insurance Company. The adjuster for the insurance company had employed the attorney of defendant, before their arrival at his office. The insurance company, through its adjuster, gave instructions to the attorney as to what to do regarding the settlement; and the attorney followed the instructions, and his employment was from the insurance company acting for the defendant and not for plaintiff or his mother, and he was paid by the insurance company, and he recognized and considered that he was representing the insurance company and not plaintiff or his mother. The defendant and the insurance adjuster fraudulently withheld from the attorney the information regarding the lifetime employment for plaintiff. The attorney gave plaintiff's mother $10 to bind the settlement with her, and told her to return in September and he would pay her the balance of $290. Plaintiff alleges that he and his mother relied on the confidence and the honesty of the agents of the defendant, because they were ignorant in such matters, could not read or write, and were not able to understand the methods necessary to effect a valid settlement on the terms mentioned. Plaintiff's mother in September, 1918, received $290 in accordance with the terms of settlement.

Neither plaintiff nor his mother was told by defendant or by the attorney that a suit was to be brought; and the suit referred to was wholly without the authority, knowledge, or consent of plaintiff or his mother. The defendant did give plaintiff employment for a few months, but about May 1, 1919, without cause it discharged him. He and his mother did not know that the contract relating to employment should have been entered into in writing and made a part of the judgment of the court, and they accepted the money believing that the other terms of the settlement were binding on the defendant and would be carried out in good faith with plaintiff. There was great disparity between the mental ability of plaintiff and his mother and the agents of the defendant, and especially the adjuster. This fact, coupled with the other fact that defendant only paid $350 to satisfy a just claim of $25,000, is fraud; and the plaintiff sets this up as an additional ground for disregarding the judgment herein referred to. He has been advised by counsel that a named attorney, on June 27, 1918, filed a suit in behalf of plaintiff by his mother as next friend, against the defendant, for the sum of $25,000, a copy of which petition is annexed hereto. The defendant filed its answer to the suit, copy of which is also attached. The name of W. P. Tillinghast appears as defendant's attorney. Plaintiff is advised that Tillinghast was really one of the insurance adjusters for the Travelers Insurance Company, and had no retainer or authority as attorney directly from the defendant; and that on September 3, 1918, a consent verdict and judgment were taken in the case for $450 and cost, a copy of which verdict and judgment are attached to this petition. The named attorney who filed the suit on June 27, 1918, filed with the clerk of the superior court a next friend's bond, and furnished as security a clerk employed by the attorney at that time. The filing of the suit, the taking of the verdict and judgment, and the executing of the bond were all without the knowledge, authority, or consent of plaintiff and his mother. The effect of the action of the defendant through its agents in employing the named attorney and not carrying out the contract of settlement made was a fraud upon plaintiff. Plaintiff has just discovered the fraud, and comes into a court of equity and asks relief against such judgment. The money received by his mother was tendered back to the defendant. The merits of his action

against the defendant arise out of the following facts: The defendant is a corporation engaged in the manufacture of iron and steel products; and to this end it uses in and about its plant locomotives, cars, and railroad-tracks. On May 13, 1918, the plaintiff was in the employment of the defendant at its plant. The particular work which he was employed to do was to clean pans from engines in the yard; and this was a safe place at which to work. It was specifically agreed between his mother (he being a minor and under her care and custody) and the superintendent of the defendant, that plaintiff was not to be given dangerous employment; and his mother warned the superintendent not to place her son at work on the cars or engines of the railroad, and it was then agreed by the superintendent that he should not be so placed. He was young and inexperienced, being seventeen years of age and small for his age, being of the size and development of a boy about fourteen or fifteen years of age; he did not know the dangers incident to coupling and switching cars and performing the duties of a switchman; and on account of his inexperience and immature judgment he was not cognizant of the obvious danger to which he was exposed, and did not appreciate the same. Although the defendant knew of his youth, inexperience, and inability to comprehend the dangers of his employment and knew that he was not cognizant of the dangers, he received no instructions and was not warned of the danger. On the date of the injury he was placed at work coupling cars in the yards where there was an engine known as a "dinkie engine" used in switching cars. The cars being switched were equipped with pans in which was loaded scrap-iron. Usually a car has four pans which extend up to either end of the car, and the engine is coupled to cars by means of a bolt or rod about three feet long, which fits over a catch or device which thus attaches the engine to the cars. On the night the injury occurred the "dinkie engine" was backing up to take on a train of about three cars which had just been set in from an adjoining track. Plaintiff gave the signal for the engineer to back up so as to get close enough to make the coupling. The engine came back, but owing to defective brakes it could not be stopped by the engineer in time; and while plaintiff was holding the three-foot coupling bolt and was ready to fit it in place so as to complete the coupling, and while in the exercise of his duty in that regard, the force of the engine, which

was beyond the control of the engineer because of the defective brakes, drove the bolt and the engine up to, against, and upon the car in such a way as to catch plaintiff's leg and almost sever it from his body. The car next to the " dinkie engine " was a three-pan car, and there was room for the engine to be pushed upon it so as to be on the space usually occupied by the pan. There was no escape from being caught. The engine came suddenly and unexpectedly, and plaintiff could not have avoided the accident. The engine should have been equipped with bumpers, or other device designed to protect persons who couple cars. Plaintiff objected to the new employment, and asked to remain on his old job; but he was told by the foreman that he could do the work all right, and that he must do it or be discharged; and, disregarding the agreement with his mother, defendant forced him from a safe place, that of cleaning pans, to a place as switchman coupling cars at night in the railroad-yards operated by the defendant. A number of acts of negligence on the part of the defendant are alleged. Plaintiff was without fault, and his injuries were the result of negligence and carelessness on the part of the defendant. At the time of the injuries plaintiff was strong and healthy, and earning the sum of $2.50 a day; and but for the injury he would now be able to earn at least $4.00 per day. His injuries are permanent, and he will always be a cripple; his earning capacity has been diminished at least one half as the result of losing his leg; he has suffered much pain and agony, and continues to suffer pain. The prayer is that the verdict and judgment for the sum of $450 and costs in favor of the plaintiff be declared a nullity, and that he have judgment in the sum of $25,000 for his damages.

The defendant filed an answer in which it denied all the material allegations of the petition, and averred that the claim of the plaintiff for the injuries sustained was settled by defendant with plaintiff and his mother, that his suit was filed to legally effect said settlement, that the attorney in that suit was regularly employed by plaintiff and his mother and represented them, and that in and about the suit and the settlement there was no fraud or misrepresentation of any kind; and defendant pleads the verdict and judgment in that suit in full settlement and satisfaction of the alleged claim set forth in the present suit and in bar of any recovery. After evidence was offered by the plaintiff the court awarded a nonsuit, and the plaintiff excepted.

*W. S. Dillon, C. M. Lancaster, and W. J. Davis Jr.,* for plaintiff.

*C. T. & J. L. Hopkins* and *McDaniel & Black,* for defendant.

HILL, J. (After stating the foregoing facts.) This was an equitable action brought by Clarence Carroll, a minor, by his mother as next friend, to set aside a judgment rendered in the city court of Atlanta on September 3, 1918, in his favor against the Atlantic Steel Company as defendant, in which a verdict and judgment were entered for $450, by which it was attempted to fully satisfy the plaintiff's claim for damages against the defendant, alleged to have been sustained by him while an employee of the defendant. The petition also had for its purpose the recovery of damages to the amount of $25,000. One of the questions to be determined in the case is whether, under the allegations of the petition and the evidence thereunder, the verdict and judgment of the city court should be set aside on the ground of fraud in their procurement, and the plaintiff be allowed to go to the jury on the questions at issue in the case.

The case of Missouri Pacific Ry. Co. *v.* Charles Lasca, 21 L. R. A. (N. S.) 338 (79 Kan. 311, 99 Pac. 616, 17 Ann. Cas. 605), was similar in its facts to the instant case. There, in a suit commenced by Charles Lasca, a minor six years of age, by Nick Lasca, his father and next friend, to set aside a judgment rendered in the same court in favor of Nick Lasca and Anna Lasca, father and mother and next friends of Charles Lasca, a minor, plaintiff, *v.* Missouri Pacific Ry. Co., defendant, for $95 and costs, the petition alleged that the defendant caused the judgment to be rendered against itself; that there was no trial upon the pleadings and proofs, nor upon the merits of the case, and no proof was made and no evidence offered and no damages assessed by the court; that the proceeding was without the knowledge or consent of Nick Lasca or Anna Lasca, and the judgment was obtained for the purpose of defrauding the plaintiff by barring the cause of action set up in the petition therein; that the plaintiff had a good cause of action for injuries caused by the negligence of the defendant, and still had such cause of action, unless barred by the judgment, which he asked to have set aside accordingly. The defendant answered by a general denial and a plea to the jurisdiction of the court. Upon the trial of the case the court made findings

of fact, from which it appears that Nick Lasca, an Italian em-
ployee of the Missouri Pacific Ry. Co., with Anna, his wife, and
their son, Charles, about eighteen months of age, were living
in a bunk-car on a side-track. Another car, upon which was a
water-tank, was standing near by on another side-track. Mrs.
Lasca went to this water-tank to draw water for domestic use,
leaving the boy with his grandmother in the bunk-car. While
the mother was thus absent the boy left the bunk-car, went to the
other side-track, and put his hands on the rail near the tank-car.
Just at that time an incoming freight-train moved the tank-car
so that a wheel passed over the boy's hands, crushing and bruising
them. Negotiations were opened between the defendant's claim
agent and the parents of the child, resulting in an agreement in
writing whereby the parents agreed to accept $100 from the de-
fendant in full of all claims for the injury, to be paid through a
friendly suit to be instituted in a certain court; this sum was to
cover all claims of the parents as well as of Charles Lasca, and
was to be divided as the attorneys for the defendant might deem
proper. In pursuance of this agreement the parents went to the
office of the defendant's attorney at the request of the claim agent,
and there met the company's attorneys and Pittman, another at-
torney, who was then in the office, with whom they consulted
about the matter. The petition, answer, and reply in the proposed
action had been prepared by the defendant's attorneys. The peti-
tion and reply were signed by Pittman as attorney for the plain-
tiff; the papers being entitled " Nick Lasca and Anna Lasca,
father and mother and next friends of Charles Lasca, a minor,
plaintiff, *v.* The Missouri Pacific Railway Company, defendant."
The petition stated a cause of action for the injuries to Charles
Lasca, and prayed for a judgment for $100. The answer con-
tained a general denial and a plea of contributory negligence, and
was signed by the defendant's attorneys. Nick Lasca and Anna
Lasca and the attorneys named then proceeded to the court of
common pleas, filed the papers and presented them to the court;
and the attorney for the defendant informed the court that this
was a friendly suit for the settlement of the claim against the
company, and that he wished to have a judgment entered against
the company, in accordance with the settlement, for $95 and cost.
The judge, the court being regularly in session, then called Nick

Lasca and Anna Lasca and inquired of them whether the settlement was satisfactory. They stated that it was, and that they desired to have judgment entered accordingly. The judge informed them that, if a judgment was entered, it would cut off all claims of the child for further damages; and thereupon judgment was entered for $95 and costs, by consent of the parties. There was no trial of the issues; and no evidence was introduced, except the statement of the parties present, to the effect that the child had been injured by the defendant company, and that the parents had effected a compromise and settlement, and that the amount agreed upon was satisfactory. The judge made an entry upon his trial docket as follows: "September 9, 1901, judgment for plaintiff for $95 and costs, by consent and agreement of all parties." Thereupon a judgment was entered upon the journal of the court in ordinary form, etc. In affirming a later ruling of the trial court, setting aside this judgment, the Supreme Court of Kansas, speaking through Benson, J., said: "While in this case the court did exercise some supervision over the agreement, it did not judicially examine the facts to determine whether the agreement was reasonable and proper. The court merely approved what the next friend had done, not because it found that it was for the best interests of the infant, but because the consent of the parents had been given and they were still satisfied. The duty of the court, stated in many decisions, and referred to in the recent case of Crapster v. Taylor, 74 Kan. 771, 87 Pac. 1138, to protect the interests of infants was not performed by inquiring of the parents if they were satisfied with the agreement. It may be that some of the cases above cited have carried the doctrine to an extreme limit. The next friend must not be denied such necessary incidental powers as will facilitate the fair adjudication of the infant's rights. This is necessary to their proper vindication, both in prosecution and defense. Where a compromise is fairly incidental to an action regularly brought, and is upon due judicial examination approved, the judgment, if not otherwise impeached, may be conclusive as in the case of adults; but where the proceedings in court are merely formal and instituted and carried on only to give an apparent sanction to the agreement, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, the judgment so entered by consent is only colorable, and must be set aside

in a proper proceeding, when its effect, if allowed to stand, would be to bar the infant's rights. In such a case the proceeding in court should be regarded ' as but formal, and as intended solely to employ the functions and powers of the court to give validity to the prior agreement.' P., C., C. & St. L. Ry. Co. *v.* Haley, 170 Ill. 610, 613, 48 N. E. 920. See also Long *v.* Mulford, 17 Ohio St. 484, 93 Am. Dec. 638; Waterman *v.* Lawrence, 19 Cal. 210, 79 Am. Dec. 212; Kromer *v.* Friday, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671, and note; Gooch *v.* Green, 102 Ill. 507; Ralston *v.* Lahee, 8 Iowa 17, 74 Am. Dec. 291. The conclusion of the trial court that no fraud in fact was committed in this transaction can not affect the right of the infant to relief. The judgment so set aside would have been an absolute bar to the prosecution of his claim, and thus he would have been deprived of his legal rights without authority. The motive of the actors does not avoid the consequences of the act. The parents had no power to consent to the judgment; having no other sanction, it can not stand."

And see, to the same effect, Leslie *v.* Proctor & Gamble Mfg. Co., L. R. A. 1918C, 55 and notes (102 Kan. 159, 169 Pac. 193). In the latter case it was held that " Where a minor has sustained personal injuries which his father and the wrong-doer settled for an inadequate sum, such minor on attaining his majority may bring an action against the wrong-doer for his injuries, notwithstanding the settlement negotiated by his father." See also, as to the powers and duties of next friends and guardians ad litem, 14 R. C. L. 288, 289, § 56, and cases cited.

Without adopting the views of the court in the Lasca case, supra, in extenso, we think the ruling upon the question we are now considering is sound. This is not a case where a lawyer is really employed by the parties and a judgment is entered under a bona fide agreement of settlement. The attorney in this case, while nominally representing the plaintiffs, was, as a matter of fact, employed by the adjuster of the insurance company to effect the settlement for the steel company. The attorney testified that " Mr. Coppix [the insurance adjuster] 'phoned me that he had a case that he wanted to give me, and I told him I would be glad to get it. He said he had a boy injured by the steel company, and they had agreed upon a settlement of the case; and that it would be necessary, he being a minor, to take a consent verdict in it; and

that he would send the boy to my office, which he did. In about an hour after that they came to my office. I had never seen them before, and didn't know anything about them until that occurred. They told me the same that Mr. Coppix had, and wanted the suit filed so they could get their money; and I took the case for the steel company. Mr. Coppix said he would pay my fees, in addition to what he would pay them, which he did. Mr. Coppix told me they had agreed upon a settlement of $300. . . I think my fee was $150. I did not introduce any evidence in behalf of the plaintiff to the court and jury when the verdict was taken. No, sir, the court did not ask the plaintiff any questions as to the merits of the case. Odessa Carroll and Clarence Carroll were not present at the trial when the verdict was taken. No, sir, I did not notify Odessa Carroll or Clarence Carroll to be in court that day; it wasn't necessary; they knew when the court was to meet," etc. It will be observed that in the Lasca case, supra, the parents of the minor child did go before the court and stated that they desired to have judgment entered according to the agreement they had entered into. But in the present case the record shows that neither the plaintiff nor his mother, who was acting as next friend for him, went before the court, and no testimony was offered as to the merits of the case, and these were not inquired into by the court. The petition in the case alleges a cause of action, and under it the plaintiff sought to recover $25,000 damages for the loss of his leg. The damages alleged were far in excess of the amount paid. The evidence of the plaintiff was sufficient to authorize a jury to find for the plaintiff in some substantial amount for the injury alleged to have been sustained by him. Besides the amount which was actually paid, the sum of $300 was paid to the mother as next friend, and not to the plaintiff. The evidence of the plaintiff was to the effect that in the agreement of settlement he was to receive a lifetime job with the defendant; and in corroboration of this contention on the part of the plaintiff, he was given employment after he had recovered from the amputation of his leg. He was receiving the sum of $3.50 per day as wages when hurt, and $2.80 per day when he was discharged, and received no further compensation for his injury. It is true that the evidence is conflicting upon the question as to whether, under the terms of the settlement, the

plaintiff was to receive a lifetime job with the defendant; and this being so, we think the case should have been submitted to a jury under proper instructions. Under the facts of this case we hold that no settlement was made that had judicial sanction. The settlement was made out of court, and the verdict and judgment were purely perfunctory, and no investigation was made before the court and jury as to the reasonableness of the settlement and as to whether the verdict and the judgment covered the agreement which was really made between the plaintiff and the defendant. And we think that in such a case, where the proceedings in court are merely formal and are instituted and carried out in order to give an apparent sanction to the settlement, and there is no judicial investigation of the facts upon which the right or extent of the recovery of damages by a minor is based, such a judgment entered in pursuance of the agreement and by consent merely, is only colorable and will be set aside in a proper proceeding, when its effect, if allowed to stand, would be to bar the infant's substantial rights. Mo. Pac. Ry. Co. v. Lasca, supra.

From what has been said we conclude that the court erred in awarding a nonsuit. *Judgment reversed. All the Justices concur.*