McCOMMONS *et al. v.* REID.

No. 15557.   OCTOBER 11, 1946.

504

*Langdale, Smith & Tillman,* for plaintiffs in error.
*Downing Musgrove* and *J. B. Copeland,* contra.

BELL, Chief Justice. The exception is to the overruling of a general demurrer to a petition in equity to set aside a consent verdict and judgment in a year's-support proceeding. The suit was brought by Carolyn Drew Reid, a minor, acting through her grandmother as next friend, and named as defendants her mother, formerly Mrs. Reid, now Mrs. Jones; Betty Reid, a minor half sister of the plaintiff; and other persons, including the guardian of the minor, Betty Reid. The plaintiff's mother did not join in the demurrer.

It is contended by the plaintiff (defendant in error) that the verdict and judgment should be set aside for the following reasons: (1) Fraud on the part of the plaintiff's mother and the other defendants; (2) lack of authority in the mother to consent to such verdict, in so far as it affected the rights of the (present) plaintiff; and (3) that a guardian ad litem should have been appointed to represent the (present) plaintiff in the year's-support proceedings in the superior court, but the court failed to appoint one. The plaintiffs in error (the demurrants) contend that the allegations of the petition are insufficient to support any one of these claims.

■ We consider first the allegations as to fraud.

The following facts appear from the petition and exhibits: R. D. Reid, the plaintiff's father, died on or about March 1, 1940. The plaintiff's mother, widow of the deceased, filed with the ordinary an application for a year's support for the benefit of herself and plaintiff, then unborn, and for a separate amount of money or property as a year's support for Betty Reid, minor child of the deceased by a former wife. Appraisers were appointed by the ordinary, and on or about April 1, 1940, made a return in which certain properties, to wit, real estate (including the residence lot), valued by the appraisers at $1585, household goods and furniture, valued at $200, a cash item of $227 (omitting 27 cents), and another cash item of $340, total $2352, were set apart *jointly* to the plaintiff and her mother, while other properties valued at $250 were set apart to the minor, Betty Reid. To this return caveats were filed, one in behalf of the child last mentioned, and after a denial of each of the caveats, appeals were taken to the superior court. In that court, on October 9, 1940, after the birth of the plaintiff, the widow consented to a verdict and judgment, under which the

*same* properties were awarded as follows: (1) To the plaintiff, the cash item of $227, and the same joint interest with her mother in the other cash item of $340; (2) to the widow (plaintiff's mother), properties valued at $980, plus designated articles of the household goods and furniture, and the joint interest with the plaintiff in the cash item of $340; (3) to Betty Reid, properties valued at $855, plus the remainder of the household goods and furniture. Since the verdict did not state any values except as to the cash items, and the share of stock, the other values included in this summary of the verdict are based upon the values stated in the return of the appraisers. The residence tract was later sold by consent of the parties, for $4494.40.

So far as shown by any allegations of fact, if the mother was guilty of any fraud against her child, it must be inferred from a comparison of such consent verdict with the return of the appraisers, and the additional circumstance that the residence tract, which was set apart by the appraisers jointly to the plaintiff and her mother, but which was awarded by the consent verdict to the mother and Betty Reid, a one-half undivided interest to each, was at some later time sold for approximately three times the amount at which it was valued by the appraisers.

Aside from mere inferences or conclusions, we find in the petition nothing, beyond what has just been stated, that may be considered on the question of fraud.

In this connection, we think that the petition is based upon two erroneous assumptions: (1) That the price at which the property was finally sold is a fact or circumstance tending to show fraud on the part of the mother; and (2) that the appraisers' return awarded to the plaintiff a clear and unencumbered one-half interest in the property.

The record does not show the date on which the suit was filed, but the bill of exceptions recites that it was filed returnable to the June term, 1946. As to the sale, the petition simply alleges that real estate in which the plaintiff "had an undivided one-half interest has been sold," and that by agreement the claim of the plaintiff has been transferred from the real estate to one-half the proceeds of the sale.

These allegations, when construed according to the settled rule, most strongly against the plaintiff, must be taken to mean that

the sale did not occur until a short time before the petition was filed, or, as we may say, at least five years after the date of the consent verdict. *Krueger* v. *MacDougald,* 148 *Ga.* 429 (1) (96 S. E. 867). Even if the price at which the property was thus sold might be considered as a circumstance in determining its actual value at the time of the consent verdict, we do not think that it would tend to show fraud on the part of the mother. As a future circumstance to be foreseen by her, we think that it would be entirely too remote as related to the claim of fraud, and we must therefore eliminate it from further consideration.

In view of what has been said, the case must be determined by the values fixed by the appraisers, in so far as questions of value are concerned.

As to the plaintiff's interest, it should be remembered that the office of a year's-support proceeding is, not to make a distribution among heirs at law, but simply to provide a support for the widow and minor children for the prescribed period. Also, where an application for a year's support is made by a widow for herself and her minor child, the law contemplates that an award shall be made to such widow and minor child in gross, and not that awards shall be made to them separately; so that, although the legal title will vest in them share and share alike, the use of the entire property shall be a joint one for the support of both the mother and the child, and of neither to the exclusion of the other, so long as the widow lives and until the child marries or reaches majority. Furthermore, if necessary, the property may be consumed or exhausted in such use, and so long as it lasts, it will be subject to exclusive use by the widow during her life, after the child marries or reaches majority. Code, §§ 113-1002, 113-1006; *Miller* v. *Ennis,* 107 *Ga.* 663, 665 (34 S. E. 302); *Moore* v. *Pittman,* 185 *Ga.* 619 (196 S. E. 50); *Farmers Bank of Tifton* v. *Williams,* 188 *Ga.* 789, 793 (5 S. E. 2d, 195); *Walden* v. *Walden,* 191 *Ga.* 182 (2), 184 (12 S. E. 2d, 345). If there are two sets of children, by different wives, the appraisers shall specify the portion going to the children of the deceased's wife, which portion shall vest in them. Code, § 113-1008.

Accordingly, in this case, it can not be said that the appraisers' return, if sustained, would have the effect of awarding to this plaintiff an unencumbered one-half undivided interest in the properties

therein set apart jointly to her and her mother. Nor, in view of the joint nature of the return and the contingencies as to its possible lawful use in the future as a year's support, could it be stated with any degree of certainty that the rights and benefits awarded to the mother by the consent verdict would exceed in value those that would accrue to her under the return of the appraisers. By that return, properties of the total value of $2352 were awarded jointly to her and the plaintiff, while the consent verdict would give to her in severalty property valued at $980 plus designated articles of household goods and furniture, together with the same joint interest with the plaintiff in a cash item of $340 that had been awarded by the appraisers. So, even on an assumed basis of half-and-half interest in the return (despite the joint interests involved), the mother would gain but little, if anything, by the consent verdict. Moreover, it might actually be more beneficial to her to have property worth $2352, awarded *jointly* to her and her child as a year's support, than it would be to have approximately half this amount awarded to her in severalty. So, it may be true that the mother lost, instead of gaining, by such consent verdict.

It appears, however, that the child, Betty Reid, was awarded only $250 worth of property by the appraisers' return, whereas under the consent verdict she would receive property worth $855 plus the portion of the household goods and furniture that was not awarded to the plaintiff's mother; also that the plaintiff herself would receive under the consent verdict only the cash item of $227 plus a joint interest with her mother in the $340. In view of these circumstances, it might be surmised that the plaintiff's mother compromised the caveats by sacrificing the interests of her child, while protecting and preserving her own interests. The petition, indeed, seems to present this contention.

In the first place, as we have seen, it can only be conjectured whether the mother did actually *protect* her interests in agreeing to the challenged verdict. Furthermore, the petition does not allege the age of Betty Reid, the child by the former marriage, or give the slightest hint as to the relative needs of these children. The mother was presumably acquainted with the facts touching their respective needs, and may in good faith have concluded that the amounts awarded to them by the verdict were relatively fair and just, considering their ages and apparent needs. Nor is it al-

leged that the property awarded by the verdict to the mother was at all out of proportion to the amount awarded to either of the children, considering their needs in comparison with hers, with respect to support and maintenance.

In view of what has been said, we think that the allegations were not sufficient to show fraud of any character on the part of the plaintiff's mother, and the same conclusion necessarily follows with respect to the other defendants. Code, § 37-702; *Tolbert* v. *Caledonian Ins. Co.,* 101 *Ga.* 741 (28 S. E. 991); *Coleman* v. *Coleman,* 113 *Ga.* 149 (38 S. E. 400); *Higginbotham* v. *Adams,* 192 *Ga.* 203, 206 (14 S. E. 2d, 856).

■ All question as to fraud having been eliminated, the remaining questions must be determined without reference to motive. The question as to authority of the mother to consent to the verdict, and as to appointment of a guardian ad litem, are so interrelated under the law and the facts, that we will consider these questions together.

The petition alleged (paragraph 16): "In the proceeding for setting apart a year's support, petitioner's interest was represented and protected by her said mother and there was no necessity for a guardian ad litem." Paragraph 17 alleged: "In the proceeding on appeal in the superior court it does not appear that any one was appointed or acted to represent or to act for the preservation of petitioner's rights and interests. If petitioner's said mother assumed or purported, without formal appointment or declaration, to represent her in the capacity of next friend, she could only do so as long as her own rights and interests did not come in conflict with those of petitioner, and when the rights and interests of petitioner and her said mother became adverse, she could no longer speak for petitioner nor bind her by any consent verdict." The petition also alleged that, under such circumstances, the mother had no power or authority to consent to the verdict, "irrespective of motive."

Paragraph 16 as quoted, supra, accords with decisions by this court holding that in a year's-support proceeding the mother has authority under the law to act as a guardian or trustee for her child, and is a sufficient legal representative for the child. *Ferris* v. *Van Ingen & Co.,* 110 *Ga.* 102 (7) (35 S. E. 347); *Hendrix* v. *Causey,* 148 *Ga.* 164 (96 S. E. 180); *Lane* v. *Jackson,* 151 *Ga.* 584

(107 S. E. 846). Whether this rule would apply where the mother consents to a verdict awarding property to her and her child, not jointly or in gross, but in severalty, we need not now determine, for in any view of that question, the petition in this case, as will be more fully shown presently, fails to show that the rights of the plaintiff were not fully protected according to law.

Furthermore, as we view the petition, the plaintiff does not contend that the interests of her mother became adverse because the verdict awarded property to her and the plaintiff in severalty, instead of jointly, or otherwise assail the verdict on that ground. On the contrary, as to this phase, she complains only because of the relative amounts awarded by the verdict to the three beneficiaries therein named.

The Code, § 49-111, declares: "Whenever a minor shall be interested in any litigation pending in any court in this State, and shall have no guardian, or his interest shall be adverse to that of his guardian, such court may appoint a guardian ad litem for such minor, which guardian shall be responsible to such minor for his conduct in connection with such litigation in the same manner as if he were a regularly qualified guardian." If under the facts of this case a guardian ad litem should have been appointed, as claimed in the petition, it must be presumed that one was appointed, unless and until the contrary appears. The petition nowhere alleges in terms that a guardian ad litem was not appointed, and only alleges that, "in the proceeding on appeal in the superior court, it does not appear" that any one was appointed to represent or act for the plaintiff. Other statements as to this matter are merely inferential, and depend upon the averment just quoted. In view of the presumption as to validity of the judgment, this averment, without more, can not be taken as showing that no guardian ad litem was in fact appointed. While, if a guardian ad litem was appointed, presumably the order of appointment would appear somewhere in the proceedings, yet after judgment a bare allegation that it does not so appear would not raise a presumption equal to the presumption in favor of the judgment, for it should then be presumed that the court performed its duty by passing an appropriate order, which has been lost or misplaced in some way. The petition does not allege to what extent search or examination was made, or refer in any manner to the minutes of the court. Accordingly, we are

obliged to assume that, if a guardian ad litem was necessary as claimed by the plaintiff, the court duly appointed one. See, in this connection. *Hand* v. *Frank W. Hall Merchandise Co.,* 91 *Ga.* 130 (1) (16 S. E. 644); *New York Life Ins. Co.* v. *Gilmore,* 171 *Ga.* 894 (157 S. E. 188); *Thomas* v. *Lambert,* 187 *Ga.* 616 (1 S. E. 2d, 443); *Davis* v. *Arthur,* 139 *Ga.* 74 (76 S. E. 676).

We do not say that even a guardian ad litem would have been authorized to conclude the plaintiff by a consent verdict in the year's-support proceedings. Kingsbury *v.* Buckner, 134 U. S. 659, 680 (10 Sup. Ct. 638, 648, 33 L. ed. 1047). The petition, however, contains no allegation that the question as to the propriety of the consent verdict was not duly submitted to the court by a lawful representative of the plaintiff, or that the court did not investigate the facts and the justice of the proposal. It should therefore be presumed that both of these things happened and that the interests of the minor were thus duly protected. Code, § 38-114; *Carroll* v. *Atlantic Steel Co.,* 151 *Ga.* 378 (106 S. E. 908, 15 A. L. R. 660); *Herrin* v. *George,* 183 *Ga.* 77 (187 S. E. 58); Thompson *v.* Maxwell Land Grant &c. Co., 168 U. S. 451 (18 Sup. Ct. 121, 42 L. ed. 539); 27 Am. Jur. 851-52, §§ 131-132. The present case differs on its facts from *Nelson* v. *Estill,* 190 *Ga.* 235 (9 S. E. 2d, 73). The allegations in that case were sufficient to show fraud.

In the instant case, the petition did not allege a cause of action, and the trial judge erred in overruling the general demurrer.

*Judgment reversed. All the Justices concur, except Atkinson and Wyatt, JJ., who dissent.*