## Spring Valley Coal Company v. Mathew Donaldson.
### Gen. No. 4,544.

1. JUDGMENT—*what does not destroy jurisdiction of equity to set aside.* An order denying a motion to vacate a judgment at law does not destroy the jurisdiction of equity to entertain a bill to set aside such judgment, where the motion was made at a time when the court of law had lost jurisdiction to entertain it.

2. JUDGMENT—*payment of, to clerk of court, unauthorized.* There is no law in this state authorizing a party against whom a judgment is rendered to pay the amount thereof to the clerk of the court which rendered it.

3. JUDGMENT—*when amount of, should not be ordered refunded as condition to setting aside.* The refunding of the amount of a judgment should not be made a condition to its being set aside where the party in whose favor the judgment was rendered never received the money and it was not paid to any one authorized to receive or receipt therefor.

4. COMPROMISE—*when not binding upon minor.* A father or next friend of a minor has no power to compromise the cause of action of such minor for personal injuries, and such a compromise, even though supported by a judgment, will not stand in a court of equity where it does not appear to have been supported by sworn testimony and is wholly inadequate in amount.

Bill in equity to set aside judgment at law. Appeal from the Circuit Court of Bureau County; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the April term, 1905. Affirmed in part and reversed in part. Opinion filed October 25, 1905.

GEORGE S. SKINNER, for appellant.

J. L. MURPHY, for appellee.

Spring Valley Coal Co. v. Donaldson.

Mr. Justice Dibell delivered the opinion of the court.

This was a bill in equity by Mathew Donaldson, an infant, by John Donaldson, his father, as his next friend, against the Spring Valley Coal Company, hereinafter called the coal company, the Chicago & Northwestern Railway Company, hereinafter called the railway company, and U. G. Hayden, the prayer of the bill being that the satisfaction of a certain judgment recovered by said Mathew Donaldson against said coal company for $250 be set aside, and also that said judgment be set aside, and that a new trial be granted to the plaintiff therein, and that the cause be placed in the same position as if no judgment had ever been recovered or satisfied. Defendants answered deny- ing the equities of the bill, and upon a hearing a decree was rendered dismissing the bill of complaint as to the railway company and Hayden, and granting the prayer of the bill as against the coal company, on condition that said infant first refund, within six months from the date of the decree, the amount of money paid by the coal company to satisfy said judgment and interest thereon at the rate of five per cent. per annum from the date of said satisfaction to the date of said refunding. The coal company has appealed from said decree, and complainant assigns cross errors upon the provision of the decree requiring him to refund.

The coal company had a shaft at Spring Valley and tracks about its shaft and grounds connecting with the railway company's tracks. Whether the tracks above the grounds of the coal company belonged to it or to the railway company does not clearly appear. It had an incline from the place where cars were loaded down to the switch tracks of the railway company, and loaded cars were run down this incline by force of gravity alone. On November 16, 1901, Mathew Donaldson was between six and seven years old. He and about a dozen other little children were playing around the tracks, he and a little girl being some- what separated from the other children. A loaded car was started down the incline by servants of the coal company.

A man by the name of Heilgeist, commonly called by the witnesses as "Holy Ghost," an employee of the railway company, was on the top of the car. The evidence tends to show that he did not look ahead, and also tends to show that he was hard of hearing. Mathew and the little girl were playing on the track in front of said descending car. It is contended by the coal company that they were picking up coal. Another person, some distance away, saw the peril the children were in, and called out, endeavoring to attract the attention of Heilgeist, but was unable to do so. The little girl was struck by a corner of the car and thrown out of the way. The wheels of the car passed over the little boy's leg. Three successive amputations followed, the last one taking off the leg at the hip joint. His father employed Hayden, an attorney, to begin suit to recover damages for the boy. Hayden brought a suit in the name of the boy, by his father as his next friend, against the coal company. Afterwards Hayden had interviews with the officers of the coal company in Chicago and Spring Valley, and with the attorney of the coal company, which resulted in his going into court, with the attorney of the coal company, and causing a jury to be waived and a judgment to be entered in favor of the boy for $250. None of the witnesses were present. Hayden had been furnished by letter with a list of the witnesses to the accident, but he had never seen them. The father had furnished him some kind of a statement in writing of what they would testify to. The father testified that he did not consent to this settlement. Hayden testified that he talked with the father over the telephone, and that the father told him to settle on such terms as he thought best. A letter written by Hayden to the father, about eight days after the settlement, tends to show that he had not previously arranged with the father for the settlement, for in that letter he tells him that he settled with the coal company, and that the reason he did so was because the attorney for the coal company showed him that the coal company did not own the ground, meaning the ground where the tracks were

upon which the accident occurred. He wrote the father that he had settled the case as far as the coal company was concerned, and that now he would sue the railway company. Of course Hayden should have known that if the coal company and the railway company were jointly liable a satisfied judgment against one of the tort feasors would release the other, as it would be a satisfaction of the entire cause of action; and as the employee of the coal company was on top of the car conducting it down the incline, and did not look ahead, it would seem at least probable that if the railway company was liable the coal company also must have been liable. The father almost immediately replied to this letter, expressing his dissatisfaction with what had been done. Almost immediately after the judgment was entered defendant paid it to the clerk of the court, and the latter paid it to Hayden. Some two months and a half after the settlement the father received $125 from Hayden, and the remaining $125 Hayden kept for his own services. Afterwards, Hayden started a suit in the name of the father against the railway company, to recover for the loss of the services of his son, and for medical expenses, but that suit was dismissed. At a later term, the father employed other counsel, who entered a motion in behalf of plaintiff to have said judgment for $250 vacated, which motion was heard and denied, no doubt on the ground that after the close of the term at which the judgment was rendered the court had no power to vacate it. An appeal was prayed from that order and a bill of exceptions was taken, but the appeal was not perfected. Thereafter plaintiff sued both companies upon the same cause of action, and they pleaded said judgment for $250 and its satisfaction, in bar of the action. Thereupon this bill was filed.

We are of opinion that the making of this motion at a later term and after the court had lost jurisdiction, and the order of the court denying it, did not bar complainant from equitable relief. We also conclude that under the principles laid down in P., C., C. & St. L. Ry. Co. v. Haley, 170 Ill. 610, the decree of the court below is right, except

as hereinafter stated. The father or next friend had no power to compromise the cause of action of this infant. The sum awarded was so slight that it could be no compensation for the injuries received, and the judgment could only be justified on the ground that the proof showed that plaintiff had no cause of action, and that this was a mere donation. While some effort was made to show that some proof was heard, and the judgment as written up so recites, yet we conclude from the whole record that there was no testimony under oath heard by the court. Hayden will not testify positively that there was; the official reporter testifies she took no testimony in the case; and no material testimony could have been heard, for no one was present who knew how the accident happened, or knew whether the testimony of the witnesses, who saw the accident, would make a case against the coal company. All the court could have had before it was what the lawyers said. Hayden had no authority to give away the case of this infant, or to concede that he had no cause of action, and especially so when he had never talked with any of the witnesses who saw the accident. The only justification he claimed in the letter to the father was that the attorney for the coal company had shown him that the company did not own the land where the tracks were, which fact alone, if true, would not necessarily relieve the company from liability for the negligence of the man in charge of the car. The minutes made by the trial judge on his docket are in evidence. There is a dispute as to how they read. They are in the record twice. In one place they read, "Jury waived—by stipulation of the parties in open court, the court finds the defendant guilty," etc. In the other place, the same entry is made to read as follows: "Jury waived by stipulation of parties in open court. The court finds the defendant guilty," etc. Neither entry shows that the judge heard any evidence. There is no law authorizing the payment of a judgment to the clerk of the court in which it was rendered. Seymour v. Haines, 104 Ill. 557; Lewis v. Cockrell, 31 Ill. App. 476.

The payment of any portion of that judgment to the next friend was unauthorized, and his receipt, therefore, would not bind the minor. The abstract makes it appear that the bill charged that the complainant received $125 and expended it in a certain way; but upon examination of the record, it appears that what the bill charges in that respect is that John Donaldson received this $125 and expended it as therein stated. The minor received none of the money.

We deem it unnecessary to pass upon the contention of appellee that the attorney and the next friend had no power to waive a jury. We think it sufficient to say that in such a suit, brought by an infant without a guardian, the court was not authorized to render a judgment for this small sum, in satisfaction of such great injuries, without proof having been made sufficient to enable the court to see that the plaintiff had no cause of action, and that it was for his interest to accept the offered settlement; that in this case the plaintiff and his father were not present, and no witness to the accident testified, and it was not in the power of plaintiff's attorney to give away his case without proof. Even if plaintiff's attorney told the court that there was no cause of action, we think that was not sufficient to justify the judgment, and that the court should have protected the infant by requiring proof. The attorney for the coal company participated in all that took place, and therefore it has no ground for complaint that the judgment is set aside. If there is no cause of action, it will be able to develop that fact upon a contested trial of the case.

Inasmuch as the coal company paid his money to the clerk who had no authority to receive it, and none of the money was received by the minor, we conclude the court ought not to have required the minor to refund that money as a condition precedent to the vacation of the judgment and an award of a new trial in the action at law. So much of the decree, therefore, as requires the complainant to refund to the coal company is reversed, and in all other respects the decree is affirmed.

*Reversed in part and affirmed in part.*