## MOEBIUS *v.* McCRACKEN.

1. APPEAL AND ERROR—MOTION TO DISMISS.

In reviewing case disposed of on motion to dismiss, Supreme Court must assume that allegations in bill of complaint are true.

2. INFANTS—APPOINTMENT OF NEXT FRIEND—STATUTES.

Under 3 Comp. Laws 1929, § 14037, formal appointment of next friend should be required, so that investigation may be made, and, if it is deemed necessary by court making appointment, execution of proper bond for protection of infant.

3. SAME—OHIO STATUTE.

In Ohio, formal appointment of next friend is not necessary (Ohio Rev. Stat. 1891, § 4998; G. C. 1910, § 11247).

4. JUDGMENT—REGULARITY OF CONSENT JUDGMENT IN OHIO FEDERAL COURT.

In determining regularity of consent judgment entered in Ohio Federal court, law of Ohio is controlling.

5. SAME—COMPROMISE JUDGMENT—INVESTIGATION OF MERITS OF CASE—IMPROPER JUDGMENT.

Where, in action for personal injuries in Ohio Federal court by infant by next friend, judgment on its face indicates that court made no investigation of merits of plaintiff's claim, but that verdict was directed on strength of settlement agreement, judgment was improperly entered.

6. COURTS—SETTING ASIDE JUDGMENT OF ANOTHER COURT.

Court will not, as rule, set aside judgment properly rendered in another court of competent jurisdiction, even when secured by perjury.

7. LIMITATION OF ACTIONS—INFANTS.

Statute of limitations does not run against minor during minority.

8. INFANTS—EQUITY.

Court of equity has always made it its special duty and province to look after interests of minors.

9. JUDGMENT—IMPROPER JUDGMENT IN OHIO FEDERAL COURT SET ASIDE—ADEQUATE REMEDY AT LAW.

While Supreme Court will not refuse recognition to foreign judgment regularly entered, nor, as rule, set aside such judgment in independent equity suit, yet, when it appears from face of judgment itself that it was entered in Ohio Federal court in favor of infant in accordance with compromise settlement without benefit of testimony or judicial examination of merits of case or fairness of compromise, and infant has no adequate remedy at law except by filing bill in equity to set aside said judgment and bringing concurrently therewith law action in circuit court, court of equity has power to grant relief.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted June 17, 1932. (Docket Nos. 52, 53, Calendar Nos. 35,968, 35,969.) Decided January 3, 1933.

Bill by Dorothy Moebius, by her next friend, Stella Moebius, against Alexander McCracken and another, doing business as Duke Cartage Company, to

set aside a judgment rendered in a United States district court in Ohio.

Case by plaintiff against defendants for personal injuries alleged to have been due to defendants' negligence. Cases heard together on motions to dismiss. From orders for defendants, plaintiff appeals. Reversed, and remanded for trial on the merits.

*Monaghan, Crowley, Reilley & Kellogg (Edward T. Kelley,* of counsel), for plaintiff.

*Carney D. Matheson,* for defendants.

BUTZEL, J. On October 25, 1923, Dorothy Moebius, then 12 years of age, while riding on a bicycle on the streets of Toledo, Ohio, of which she was a resident, was run down by a truck of defendants Alexander McCracken and Coral W. Duke, doing business as Duke Cartage Company in Detroit, Michigan. Her left leg was partially crushed by the truck wheels. Claiming negligence on the part of defendants, suit was brought against them in the common pleas court for Lucas county, Ohio, by "Dorothy Moebius, an infant 12 years of age, by William Moebius, her father and next friend," as appears in the caption of the pleadings and judgment. The case was removed to the Federal district court for the northern district of Ohio, western division, on January 16, 1924. On November 12, 1924, the jury was impaneled, and, as stated in the court records, "It appearing to the court that the parties herein have arrived at an agreement of settlement herein in the sum of $4,500," a verdict was directed and judgment entered, and such judgment thereupon satisfied and discharged by the attorney for

"William Moebius, next friend." There is no showing in the record that the court inquired into or considered the fairness of the settlement, nor was there any order entered in either court appointing William Moebius next friend. The judgment itself, except in the caption, does not contain any specific finding that William Moebius was next friend.

On May 5, 1931, over six years later, the two instant suits, one on the chancery and the other on the law side of the Wayne circuit court, were begun against defendants by "Dorothy Moebius, by her next friend, Stella Moebius." Proper orders appointing Stella Moebius next friend were duly entered. In the chancery suit, plaintiff represents that she is 19 years of age, a resident of Toledo, and that she sustained her injuries through the negligent operation of defendants' truck; that she has endured very great suffering and has been put to a very large expense over a period of years; that she was confined to a hospital for over eight months, and then was obliged to visit it frequently for several years thereafter for treatment; that she has required constant medical attention for over five years; that she now has a deformed leg, and that she will always be lame and walk with a limp; that there is no flesh on the leg where it was broken, so that the skin which has been grafted on the injured part breaks at the slightest shock, and that sores form which are slow in healing and require the care of a physician continually. She claims damages in the amount of $75,000. She further asks that the entire proceedings in the Ohio Federal court be set aside and held to be null and void on the following grounds: That William Moebius had no legal right or authority to represent her; that the amount awarded was wholly inadequate to compensate her

for her injuries and expenses, and that the court did not in any manner examine into the merits of the claim, hear or examine witnesses, take testimony, nor investigate the extent of her injuries or her expenses; that it did not find the alleged compromise was for her best interests, as required by law, and that the court, upon being informed of the alleged compromise and settlement, thereupon without investigation directed a verdict upon which judgment was entered.

She specifically seeks to have the Ohio suit declared a nullity and to enjoin defendants from claiming that the judgment entered therein is a bar to her recovering the full amount of damages claimed in the companion suit brought on the law side of the court. The two cases were heard together, and motions made to dismiss the bill of complaint and the declaration on the ground that the Michigan court had no jurisdiction of the subject-matter; that the cause of action was barred by the prior judgment, and that the claim or demand in plaintiff's pleading had been released. An order was entered by the trial court granting the motions, without prejudice to the rights of plaintiff to bring suit in a proper tribunal.

Two questions are presented on this appeal: One, whether the proceedings in the trial court were proper and are binding on plaintiff; and secondly, if they are not, can a Michigan court set aside a judgment rendered in the Federal court in Ohio, through its power over the parties?

Inasmuch as the cases were disposed of on motion to dismiss, we must, in considering these questions, assume that the allegations in the bill of complaint are true. If the judgment had been rendered by a lower court of this State under like conditions

and facts similar to those alleged in the bill of complaint, it would be vacated. In *Palazzolo* v. *Judge of Superior Court*, 234 Mich. 547, 549, where the next friend of an infant plaintiff in a personal injury case stipulated that a judgment for a certain amount be entered, the judgment was set aside, even though the court made some inquiry into the extent of the injuries of plaintiff. In the instant case, no testimony of any kind was taken. To like effect are *Metzner* v. *Newman*, 224 Mich. 324 (33 A. L. R. 98); *Dudex* v. *Sterling Brick Co.*, 237 Mich. 470.

Plaintiff contests the validity of the Ohio judgment on the ground that there was no formal appointment of a next friend by a court. In *Sick* v. *Michigan Aid Ass'n*, 49 Mich. 50, it was held that in a suit on an insurance policy, begun in the name of the widow and her children, all of whom were insured thereby, the failure of the widow to be appointed next friend was not deemed sufficient cause to nullify the judgment. We believe, however, that under 3 Comp. Laws 1929, § 14037, enacted after the decision, a formal appointment of a next friend should be required so that an investigation may be made, and, if it is deemed necessary by the court making the appointment, the execution of a proper bond ordered for the protection of the infant. In Ohio, a formal appointment is not necessary. Ohio Rev. Stat. 1891, § 4998 (G. C. 1910, § 11247). Also, see, *Tuttle* v. *Furi*, 22 O. C. C. (N. S.) 388 (43 O. C. C. 626).

In arriving at our conclusions as to the effect of a consent judgment entered without examination on the merits, we must rely upon the law of Ohio to determine the regularity of the Ohio judgment. Unfortunately, we have not been able to find any cases in which the question was passed upon by the

supreme court of Ohio. We must, therefore, look to the statutes and the decisions of the inferior and intermediate appellate courts of Ohio, as well as those of the higher courts of this and other States. Our attention is called to the Ohio statute set forth in section 10933 (Throckmorton's Code, 1930), which provides as follows:

"Where personal injury is caused to a minor by wrongful act, neglect or default, such as would entitle the minor to maintain an action and recover damages therefor, the guardian of such minor is authorized to adjust and settle said claim with the advice, approval and consent of the probate court."

While this section is not directly applicable to next friends, it nevertheless shows the public policy of the State in regard to protecting the rights of minors. In *Sawitzke* v. *Peters Mach. & Manfg. Co.,* 35 O. C. C. 600 (29 O. C. A. 513), where the mother, as next friend of a minor who has been injured, allowed a consent judgment to be entered, such judgment was held not binding. The court said:

"The office of next friend is solely to bring the infant into court because of his legal inability to present his own case; the next friend can do nothing which may injure the rights of the infant and his admissions are not binding upon the infant; the next friend cannot release a cause of action, nor compromise, nor submit it to an arbitration."

In *Caine* v. *Victor Lamp Co.,* 14 Ohio N. P. (N. S.) 369, 379, the court, in setting aside the judgment, said:

"The apparent purpose of the judgment entered by the justice of the peace in this case was to give legal sanction to the compromise and settlement which had been agreed upon by plaintiff's next

friend. We have seen that the justice of the peace had no legal right to enter such judgment except after due examination and inquiry into the facts.''

To like effect is *Rupert* v. *Cincinnati Traction Co.,* 45 O. C. C. 523 (29 O. C. A. 238). In *Cunningham* v. *Cleveland Consolidated Bottling Works Co.,* 12 Ohio App. 309 (31 O. C. A. 102), the consent judgment was upheld, but an examination of the facts indicates that the court examined the merits of the case before allowing the entry of the judgment. *Rammelsberg* v. *Mitchell,* 29 Ohio St. 22, relied on by defendants, is not in point. The judgment in the instant case indicates on its face that the Federal court made no investigation of the merits of plaintiff's claim, but that the verdict was directed on the strength of the settlement agreement. The courts have repeatedly set aside consent judgments following a compromise of a minor's claim where there has been no real examination of the facts to determine whether the settlement is for the best interests of the minor. *Missouri Pacific R. Co.* v. *Lasca,* 79 Kan. 311 (99 Pac. 616, 21 L. R. A. [N. S.] 338, 17 Ann. Cas. 605); *Robison* v. *Floesch Construction Co.,* 291 Mo. 34 (236 S. W. 332, 20 A. L. R. 1239); *Carroll* v. *Atlantic Steel Co.,* 151 Ga. 378 (106 S. E. 908, 15 A. L. R. 660); *Tennessee Coal, Iron & R. Co.* v. *Hayes,* 97 Ala. 201 (12 South. 98). See, also, *Pittsburg, C. C. & St. L. R. Co.* v. *Haley,* 170 Ill. 610 (48 N. E. 920); *Spring Valley Coal Co.* v. *Donaldson,* 123 Ill. App. 196; *Keller* v. *Caldwell Furniture Co.,* 199 N. C. 413 (154 S. E. 674); *Leslie* v. *Proctor & Gamble Manfg. Co.,* 102 Kan. 159 (169 Pac. 193, L. R. A. 1918 C, 55).

There is some authority maintaining the validity of a compromise, aided by the formality of a judgment, in cases where a similar question has arisen.

However, in view of the great weight of authority, including the decisions of this State and the Ohio statute and decisions hereinbefore referred to, we must conclude that the judgment of the Federal court was improperly entered.

The more serious question, however, is whether a judgment of a court of competent jurisdiction in one State may be attacked for fraud in a court of equity of another State, or whether it can only be attacked by a direct proceeding in the court where it was rendered. Defendants rely upon statements made in the cases of *Barancik* v. *Schreiber,* 246 Mich. 361; *Dunlap* v. *Byers,* 110 Mich. 109; *Mutual Fire Ins. Co.* v. *Phœnix Furniture Co.,* 108 Mich. 170 (34 L. R. A. 694, 62 Am. St. Rep. 693), which would deny the right of plaintiff to attack the judgment, except in the court in which it was rendered. It will be noted, however, that in these cases cited no bills in equity were filed to set the judgments aside by action *in personam,* and it does not appear whether or not the judgments could have been vacated by the court which rendered them. A court will not, as a rule, set aside a judgment properly rendered in another court of competent jurisdiction, even when secured by perjury. See *Columbia Casualty Co.* v. *Klettke,* 259 Mich. 564. In *Dudex* v. *Sterling Brick Co., supra,* in considering the lower court's direction of a verdict for defendant on his showing that a settlement had been made with the approval of the probate court, Mr. Justice Clark, in concurring in the result, reversal, and writing for the majority of the court, said (p. 477):

"To set aside a settlement made by and under an order of the probate court which it had jurisdiction to make, as unfair or fraudulent, there must be direct proceeding for that purpose, a bill in equity.

It was held in *Berdan* v. *Milwaukee Mutual Life Insurance Co.,* 136 Mich. 396 (4 Ann. Cas. 332), quoting syllabus:

" 'Equity has jurisdiction to set aside a fraudulent settlement of a minor's claim against an insurance company, made by his guardian under the direction of the probate court, as there is no adequate remedy at law.' "

We held that the probate court lacked jurisdiction, and that a collateral attack might be made.

The statute of limitations does not run against a minor during her minority. Plaintiff pertinently points out the fact that she has no adequate remedy at law, except by filing a bill in equity and bringing the law case concurrently therewith in the Wayne circuit court. She is a resident of Toledo. She cannot secure service of process in an independent suit brought in an Ohio court, for defendants reside in Michigan. She further shows that she cannot obtain any relief in the court in which the judgment was rendered, for a Federal court has no power to vacate its judgment after the term in which it was entered. See *Cameron* v. *M'Roberts,* 3 Wheat. (16 U. S.) 591; *McMicken* v. *Perin,* 18 How. (59 U. S.) 507; *Bronson* v. *Schulten,* 104 U. S. 410; *United States* v. *Mayer,* 235 U. S. 55 (35 Sup. Ct. 16).

While there has been no answer to or hearing upon plaintiff's bill of complaint, we are impressed with her claim that she has no adequate remedy at law. The court of equity has always made it its special duty and province to look after the interests of minors. In other jurisdictions it has been held that, under similar circumstances, a suit will lie to vacate a judgment obtained by fraud in another court of competent jurisdiction. In the case of *Leslie* v. *Proctor & Gamble Manfg. Co., supra,* a consent judgment was rendered in favor of a minor in a Kansas City court as a result of a compromise.

When the minor reached his majority, he brought suit in the county district court, alleging that the first judgment was null and void and that it should be vacated and held for naught. In granting him the relief sought, the court said:

"Passing then to the main question, it is defendant's contention that the district court had no jurisdiction to entertain this cause as an independent action, and that it could only exercise an appellate jurisdiction to affirm, reverse, modify or vacate the judgment of the city court. Defendant also insists on the application of the ordinary rule that a judgment can only be vacated in the court in which it was rendered.

"In this case, however, it should be noted that the petition contains allegations of extrinsic fraud not involved in the issues in the city-court case, and the judgment is therefore properly subjected to a direct attack. Moreover, the judgment in the city court was not upon the merits, but upon an unauthorized agreement between plaintiff's father and the defendant. There was no judicial consideration of the matter at all in the city court—not even on the question whether the infant's interests were being protected by the agreement to which the city court was asked to give its judicial sanction. There was in fact no judgment in any proper sense, but merely a mummery of form in a vain endeavor to give some colorable judicial approval of the settlement. * * *

"It is urged that the plaintiff's petition is but a collateral attack on the judgment entered in the city court. We think not. It is a direct attack.

" 'Proceedings instituted for the purpose of destroying, impairing or modifying the force or effect of a judgment for all cases, such as proceedings to reverse, vacate, set aside, declare void, suspend, modify, or perpetually enjoin a judgment, are direct proceedings.' (*Mastin* v. *Gray*, 19 Kan. 458, 466 [27 Am. Rep. 149].)"

In the case of *Wilcox* v. *Kassick*, 2 Mich. 165, also relied upon by defendants, the court stated that

great weight must be attached to the decisions of the
United States courts with regard to the force of a
judgment of a court of one State in the courts of
another jurisdiction. In *Marshall* v. *Holmes,* 141
U. S. 589 (12 Sup. Ct. 62), suit was brought in
equity to annul the judgments obtained against the
plaintiff in a prior action brought in the State court.
In reversing the State court's denial of a petition
for removal to the United States court on the ground
that the latter could not acquire jurisdiction of the
cause of action because the court rendering the judg-
ment had the sole power of annulment, the court
said:

"While it (the Federal court) cannot require the
State court itself to set aside or vacate the judg-
ments in question, it may, as between the parties
before it, if the facts justify such relief, adjudge
that Mayer shall not enjoy the inequitable advan-
tage obtained by his judgments. A decree to that
effect would operate directly upon him, and would
not contravene that provision of the statute pro-
hibiting a court of the United States from granting
a writ of injunction to stay proceedings in a State
court. It would simply take from him the benefit
of judgments obtained by fraud."

In *National Surety Co.* v. *State Bank of Hum-
boldt,* 56 C. C. A. 657 (120 Fed. 593, 61 L. R. A. 394),
it was held that the Federal court in Nebraska had
jurisdiction in equity to restrain the enforcement of
a judgment of a Nebraska court obtained by fraud
or unavoidable accident. To like effect, as to the
power of equity courts to avoid the force of foreign
judgments by decrees against the person, are
*Pearce* v. *Olney,* 20 Conn. 544; *Dehon* v. *Foster,* 86
Mass. 545; *Doughty* v. *Doughty,* 27 N. J. Eq. 315.
In *Stevens* v. *Central National Bank,* 144 N. Y. 50

(39 N. E. 68), the court cited with approval the following statement in 2 Story's Equity Jurisprudence (13th Ed.), § 899:

"Although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their own territorial limits. When therefore both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties and direct them by injunction to proceed no further in such suit. In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court; but without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties, *  *  * and enforce obedience to their decrees by process *in personam*."

In *Wonderly* v. *Lafayette County,* 150 Mo. 635 (51 S. W. 745, 45 L. R. A. 386, 73 Am. St. Rep. 474), in holding that a suit may be brought in a State court to annul a judgment of the Federal court on the ground that it has been obtained by fraud, the court said:

"The point is advanced in plaintiff's brief that a judgment can be annulled on the ground that it was obtained by fraud only in the court in which it was rendered. But there is no foundation in reason or authority for that proposition. *  *  *

"A suit to set aside a judgment is a suit in equity and it was necessarily in another court than that in which the judgment was rendered when courts of law and courts of chancery were separate, and when the judgment attacked was a law judgment. In the case at bar if the defendant could have no relief in a State court, it could have none at all. *  *  *

"A suit in equity to set aside a judgment in no sense assails the court in which the judgment was rendered; it is simply a proceeding *in personam,* and the decree adjudges the rights of the parties *inter sese* in relation to that judgment.   *   *   *

"There are decisions to the effect that a State court will not interfere with the due course of a writ issuing out of a Federal court or a trial there, and in like manner, and for the same reason, a Federal court would not interfere with the process of a State court or with a trial there.   But the principle on which these decisions are founded has nothing to do with a proceeding in equity to set aside a judgment on the ground that it was obtained by fraud.   In such case a Federal court of equity will entertain a bill to set aside a judgment obtained in a State court, and a State court of equity will entertain a bill to set aside a judgment obtained in a Federal court.   The distinction here made is pointed out by the Supreme Court of the United States in *Marshall* v. *Holmes,* 141 U. S. 589 (12 Sup. Ct. 62)."

In accord:   *Keith* v. *Alger,* 114 Tenn. 1 (85 S. W. 71).

While we will not refuse recognition to a foreign judgment regularly entered, nor, as a rule, will we set aside such a judgment in an independent equity proceeding, by exercising chancery power over the parties, nevertheless, when it appears from the face of the judgment itself that it was entered in accordance with a compromise settlement, as a mere formality designed to lend strength to the agreement affecting minors' rights and without the benefit of testimony or a judicial examination of the merits of the case or the fairness of the compromise, a court of equity, in performance of its duty to protect the interests of minors, should give relief.   To deny plaintiff the right to bring the suit may result in depriving her of any remedy at law for what may

be a flagrant fraud practiced on her. While at a hearing on the merits defendant is not precluded from disproving the charges in plaintiff's bill of complaint, nevertheless, on a motion to dismiss, we must assume the allegations to be true. Under the circumstances, we believe the orders dismissing the bill of complaint and the declaration were improper. They are set aside, with costs to plaintiff, and the cases are remanded to the lower court for trial on the merits.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred with BUTZEL, J. WIEST, J., concurred in the result.