NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 06a0140n.06
Filed: February 23, 2006

**Nos. 04-2260, 05-1317**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SHARON GREEN, Guardian and Conservator
of LINDA COLES, a legally incapacitated
person,

     **Plaintiff-Appellant,**

v.

BP PRODUCTS OF NORTH AMERICA, INC.,

     **Defendant-Appellee.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____/

**BEFORE:**    **COLE, CLAY and GIBBONS, Circuit Judges.**

    **CLAY, Circuit Judge.** Plaintiff, Sharon Green, guardian and conservator of the Estate of

Linda Coles, appeals the district court's order granting Defendant BP Products of North America,

Inc.'s ("BP") motion for summary judgment and the district court's order denying Plaintiff's Rule

60(b)(2) motion to reconsider, claiming that a 1976 settlement between the estate of Linda Coles and

BP's predecessor, Amoco Oil Company ("Amoco"), should be set aside. For the reasons set forth

in this opinion, we **AFFIRM** the district court's order.

I.

    A.    Original 1974 Lawsuit and Settlement

The present action arises from a 1973 automobile accident in which Linda Coles ("Coles"), at that time a twelve year old pedestrian, was struck by a vehicle owned by Amoco, and operated by Amoco employee Mark Hagenow.  The brain injuries Coles sustained rendered her in a permanent vegetative state, and she is unable to walk, talk or care for herself.

On or about May 24, 1974, Rudolph Coles, Coles' father, individually and as a next friend of Linda Coles, and Gladys Coles, Coles' mother, filed suit against Mark Hagenow and Amoco in the Wayne County Circuit Court.  In the 1974 lawsuit, there were separate claims for the estate of Linda Coles (Count I), Rudolph Coles (Count II), and Gladys Coles (Count III).  The case was removed to the United States District Court for the Eastern District of Michigan in June 1974, and the parties engaged in discovery for over two years.

On July 8, 1976, the parties reached a global settlement.  Prior to entry of the settlement, Nicholas Smith (who had previously been one Coles' attorneys) and Security Bank & Trust were appointed co-guardians of the estate of Linda Coles by the Wayne County Probate Court, and the original Complaint was amended to list the plaintiffs as Nicholas Smith and Security Bank and Trust Company, co-guardians of the estate of Linda Coles, a minor, and Gladys and Rudolph Coles.

A Motion and Stipulation for Entry of Consent Judgment was filed in the district court on July 8, 1976, settling claims both for traditional tort damages and past and future no-fault benefits pursuant to the Michigan no-fault law.  The settlement terms were reduced to three separate consent judgments, one for the estate of Linda Coles, one for Rudolph Coles and one for Gladys Coles.  The estate of Linda Coles received $500,000 total, $250,000 in no-fault claims and $250,000 in traditional tort claims.  Rudolph and Gladys Coles received $220,000 each, including $110,000 for

their no-fault claims and $110,000 for their tort claims. The attorneys fees of $313,333.33 were paid from the recoveries of Rudolph and Gladys Coles only, not from the estate of Linda Coles.

Prior to signing the consent judgments on July 8, 1976, the magistrate judge held a hearing, which was attended by all interested parties, including Coles, her co-guardians, parents, and attorneys for defendant Amoco. During the hearing, the magistrate judge sought to ascertain whether the settlement was in the best interest of the child. Coles' co-guardians and parents testified. As part of his questioning of the co-guardians, the magistrate judge asked,

> Do you understand that if you thought it in her best interests, and if you determined that you wanted to, its conceivable that you could try the pending case to a conclusion, and irrespective of the outcome of that still collect no-fault benefits for the child perhaps for life?
>
> Do you understand that if the child's claim is settled here today no further money can be asked of either Amoco or Mr. Hagenow either for no-fault benefits or for damages under tort?

(J.A. at 229.) Both co-guardians replied "yes," to these questions. Nicholas Smith testified that the settlement amounts were reached after long discussions and negotiations with attorneys and representatives of the defendants in order to arrive at a settlement that was in the best interest of Coles and her parents. Immediately following witness testimony, the magistrate judge signed the consent judgments, deeming the awards appropriate.

The language of the consent judgment for Coles' estate provides that the amounts recovered were to be in "full settlement of all claims, including all claims for and to traditional tort damages and, also, in full settlement of all claims and all rights for and to recovery on theory of tort liability under the no-fault law." (J.A. at 196.)

B. The 2003 Lawsuit

3

On October 7, 2003, Plaintiff Sharon Green[1], guardian and conservator of the estate of Linda Coles, filed suit in the United States District Court for the Eastern District of Michigan against BP, claiming that BP breached its contractual obligations under the 1976 settlement and generally claiming that BP had failed to satisfy its statutory duties towards Coles as required by the Michigan No-Fault Act, M.C.L. § 500.3101 et seq.

On February 23, 2004, the district court bifurcated the case for discovery purposes and to rule upon potentially dispositive legal issues related to the enforceability of the July 8, 1976 settlement of the original lawsuit. The court ordered limited discovery to be conducted through March 26, 2004. Defendant took the deposition of Nicholas Smith, Coles' attorney from the 1974 lawsuit and former co-guardian of her estate, on March 22, 2004. Plaintiff took the deposition of Conrad Kohls, another one of Coles' attorneys from the 1974 lawsuit .

On April 30, 2004, Defendant filed a motion for summary judgment, asserting that Plaintiff should not be permitted to pursue this cause of action because Coles, through previous guardians, had released all of her future no-fault claims as part of the 1976 settlement. Plaintiff responded on May 24, 2004, claiming that a genuine issue of material fact exists as to the validity and scope of the release, and that the settlement is void for failure to obtain probate approval, failure of the Wayne County probate court to pass on the sufficiency of the bond; and also that the consent judgment entered in the original lawsuit is void because it does not contain a specific waiver or release of future benefits, and because any release of future benefits is void as being contrary to

---

[1]As of April 30, 2004, Sharon Green (Linda's sister) has been guardian and conservator of Linda Coles and her estate. (Plaintiff's Br. at 13) Apparently, Green is also primarily responsible for Linda Coles' care and maintenance.

public policy. The district court issued an Opinion and Order dated September 8, 2004, granting Defendant's motion for summary judgment, finding that Coles' guardians had in fact released her claims to future no-fault benefits as part of the 1976 agreement.

On November 23, 2004, Plaintiff filed a 60(b)(2) motion for reconsideration, claiming that she had newly discovered evidence that was not available during the earlier proceeding, namely a report dated September 19, 1976, from Dr. John Henderson, Ph.D., that estimated the lifetime cost of caring for Coles to be $1,338,528. The district court denied this motion on February 7, 2005.

Plaintiff filed this timely appeal on March 7, 2005.

## II.

We review a trial court's grant of summary judgment *de novo*. *Gerbec v. United States*, 164 F.3d 1015, 1018-19 (6th Cir. 1999). "Summary judgment is appropriate so long as the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Williams v. Int'l Paper Co,*, 227 F.3d 706, 710 (6th Cir. 2000) (quoting *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997)). When determining whether to reach this conclusion, this Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Id*; *see also Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998).

We believe that the district court properly determined that Defendant was entitled to summary judgment where the 1976 settlement of Linda Coles' claims was valid and constituted a waiver and release of Coles' claim to future benefits pursuant to the Michigan no-fault statute.

5

A. The Validity of 1976 Settlement and Consent Judgments

A settlement agreement "is a contract and is to be construed and applied as such." *Mass. Indemnity and Life Ins. Co. v. Thomas*, 520 N.W.2d 708, 710 (Mich. Ct. App. 1994). "[S]ettlement agreements should not normally be set aside and [] once a settlement agreement is reached a party cannot disavow it merely because he has had a 'change of heart.'" *Metro. Life Ins. Co. v. Goolsby*, 418 N.W.2d 700, 701 (Mich. Ct. App. 1987). "[A]greements or consents entered into between parties in open court will not be disturbed absent satisfactory evidence of mistake, fraud, or unconscionable advantage." *Siegel v. Spinney*, 367 N.W.2d 860, 862 (Mich. Ct. App. 1985) (citing *Meyer v. Rosenbaum*, 248 N.W.2d 558, 559 (Mich. Ct. App. 1976)); *see also Metro Life v. Goolsby*, 418 N.W.2d at 701(stating that absent a showing of factors such as fraud or duress, courts act properly when they enforce such agreement). The *Meyer* court rationalized that "[i]t is important that parties be able to settle cases fairly and finally on the record, and such settlements should not be upset because of any subjective hesitation or secret reservation on the part of either party." *Meyer*, 248 N.W.2d at 558.

There are, however, further considerations that must be taken into account when the settlement at issue concerns the interests of minors. Under Michigan law, when the settlement agreement involves a minor, the court must make a determination that the settlement is in the best interest of the minor. *Centala v. Navrude*, 186 N.W.2d 35, 37 (Mich. Ct. App. 1971). "[W]here a judgment is rendered for plaintiff in an action by an infant through his next friend and there is no judicial investigation of the merits, but the proceedings are merely formal, the judgment merely colorable, merely a consent judgment, it will not be permitted to stand as a bar to a hearing on the

merits on behalf of the infant." *Ombrello v. Duluth, S.S. & A. RY. Co.*, 233 N.W. 357, 359 (Mich. 1930). On the other hand, the *Ombrello* court held that settlement orders should not be set aside in a situation where there is a settlement order properly entered before the court, finding it for the best interest of the child. *Id*; *see also Moebius v. McCracken*, 246 N.W. 163, 165 (Mich. 1933) (citations omitted).

The court in the 1974 lawsuit properly entered the consent judgment settling the claims for the estate of Linda Coles for $500,000, after determining that settlement was in Coles' best interest. At the 1976 settlement hearing, the magistrate judge reviewed the Motion and Stipulation for Entry of Consent Judgment, called witnesses and inquired as to whether the settlement was in the best interest of the child. All of the witnesses testified that they believed that the $500,000 settlement to the estate of Linda Coles was in fact in Coles' best interest. Among those called were Nicholas Smith, co-guardian of the estate, Konrad Kohl, attorney of record, and Richard Lewis of Security Bank and Trust (the investment officer). Lewis testified that the money, with safe and diverse investments, would yield a return of eight percent or better, and that the investment strategy would take into account expected inflation in the future. The fact that the court called the investment officer responsible for handling the funds suggests that the court was concerned with the safety and proper maintenance of the funds.

While it is unfortunate that Plaintiff now apparently considers the funds from the 1976 settlement to be inadequate, there is no evidence in the record that mistake, duress, fraud, or unconscionable advantage were involved in securing the consent judgment.

B. Waiver of Claims to Future No-Fault Benefits as Part of the 1976 Settlement

7

Plaintiff also argues that there could not have been a waiver and release of future benefits that were payable pursuant to the Michigan no-fault statute.  We disagree.  Under Michigan law, a "release is valid if it is fairly and knowingly made." *Brooks v. Holmes*, 413 N.W.2d 688, 689 (Mich. Ct. App. 1987) (citations omitted); *Binard v. Carrington*, 414 N.W.2d 900, 902 (Mich. Ct. App. 1987).  "When a release is challenged, the party seeking to avoid the release must prove by a preponderance of the evidence that the release should be set aside." *Binard*, 414 N.W.2d at 902. "A release is invalid if (1) the releasor was acting under duress, (2) there was misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release." *Brooks*, 413 N.W. 2d at 689.

The Michigan no-fault statute provides in relevant part that "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person . . . ." M.C.L. § 500.3112.  This statute was in effect at the time of Coles' accident, and the parties to the original lawsuit agreed that she was entitled to recover personal protection insurance benefits under the statute.  As part of 1976 consent judgment, however, the guardians of Linda Coles' estate agreed to release all present and future claims, including claims for benefits payable pursuant to the Michigan no-fault statute.  The consent judgment states in pertinent part:

> Plaintiffs . . . recover against the defendant Amoco Oil Company the damages or benefits aforesaid consented to in the amount of Two Hundred Fifty Thousand And No/100 ($250,000.00) Dollars without interest, without costs and without attorney's fees in full settlement of said plaintiffs' claims for and rights to no-fault or personal protection insurance benefits under the Michigan no-fault law . . . .

(J.A. at 195.)  Plaintiff cannot and does not allege that the release was not knowingly made.  The language of the consent judgment clearly and unambiguously states that claims for these benefits

were released for $250,000.  Therefore, absent evidence of fraud, duress or overreaching, of which there is none, we find that the release is valid.

### C.      The Release of Future No-Fault Benefits Was Not An Assignment

There is no merit to Plaintiff's claim that the release of future benefits should be voided because the monies paid to Gladys and Rudolph Coles constituted an assignment of Coles' right to future benefits payable pursuant to the Michigan no-fault statute.  The Michigan courts have "defined the word 'assignment' in the language of Webster as meaning 'to transfer or make over to another;' and in the language of Burrill's Law Dictionary as 'to make over or set over to another; to transfer.'" *State Treasurer v. Abbott*, 660 N.W.2d 714, 719 n.8 (Mich.2003) (citing *Aultman, Miller & Co. v. Sloan*, 73 N.W. 123, 153 (Mich. 1897)).

As correctly stated by Plaintiff, under the no-fault statute, "[a]n agreement for assignment of a right to benefits payable in the future is void."  M.C.L. § 500.3143; M.S.A. § 24.13143.  Plaintiff, however, attempts to minimize the fact that the Michigan Court of Appeals has explicitly held that the aforementioned statute does not apply to releases.  "The clear language of the statute indicates that it applies to assignments.  An assignment is not a release.  We have no authority or desire to expand upon the plain language of the statute to include releases in the prohibition." *Lewis v. Aetna Casualty & Surety Co.*, 311 N.W.2d 317, 318 (Mich. Ct. App. 1981) (finding the statute inapplicable to a case in which the injured plaintiff was seeking to void a settlement agreement with her insurer where plaintiff had signed a release for past, present, and future claims arising out of the accident that caused her injury).  "It was plaintiff's choice to settle the dispute and sign the release, a tactical judgment which this Court will not review."  *Id*. at 319.

Similarly, in the present case, there was no assignment of Coles' rights to her parents. Plaintiff claims in her briefs to this court that "It goes without saying that a significant portion of the total payment to Rudolph and Gladys Coles represents transfer of PIP monies to them from the Estate of Linda Coles." (Plaintiff's Br. at 26.) The record reveals, however, that this is a gross misstatement of fact. As stated by the district court, "there is absolutely nothing within the parties' joint motion, stipulation or in the Consent Judgment that establishes the existence of an assignment. Moreover, there is no suggestion on this record that any participant in this case ever intended the 1976 settlement to be construed as an assignment." (J.A. at 26.) For a total of $500,000.00, the guardians of the estate of Linda Coles, as noted above, agreed in open court to a release of all future and present claims, both traditional tort claims as well as claims under the no-fault statute. There were two other separate consent judgments entered on behalf of Rudolph and Gladys Coles, in settlement of their own individual claims.

The complaint from the original 1974 lawsuit shows that Rudolph Coles filed a claim for present and future medical expenses and cost of care, as well as a claim for loss of love, society, companionship and services of his daughter. (J.A. at 94.) Gladys Coles similarly sued Defendants for loss of love, society, and companionship of her daughter. (J.A. at 95.) The consent judgments filed to settle the claims of Rudolph and Gladys Coles state that they were each recovering for their individual claims and rights to no-fault or personal protection insurance benefits under the Michigan no-fault law. (J.A. at 197-200.) Nothing whatsoever in the language of the judgments suggests that there was any assignment of Linda Coles' rights to her parents. In fact, the entry of the three separate consent judgments expressly contradicts this notion, since the three separate judgments

clarify what each individual Plaintiff was entitled to, as well as what rights were being waived or relinquished.

We therefore conclude that there was no assignment of Linda Coles' rights under the Michigan no-fault law, and the 1976 consent judgment for the estate of Linda Coles should not be voided.

> D.     The Release of Future No-Fault Benefits Should Not Be Voided For Lack Of Consideration or as Contrary to Public Policy

Plaintiff also attempts to make the argument that the $250,000 settlement for Linda's future personal injury benefits should be voided because the consideration was inadequate and because the release of Coles' claim to future no-fault benefits is against public policy. Again, we disagree.

First of all, "as a general principle of law, courts will not inquire into the adequacy of consideration unless it is so grossly inadequate as to shock the conscience of the court." *Binard*, 414 N.W.2d at 903 (citations omitted). Plaintiff argues that the consideration paid to Linda Coles' estate was "manifestly inadequate," but we do not believe, taking into account the facts of this case, that a $500,000.00 settlement in 1974 can be considered so grossly inadequate as to shock the conscience of the court. Coles concededly sustained serious, permanent and life-altering injuries, but the settlement provided her the certainty of a substantial settlement amount, which her guardians deemed to be in her best interest.

Plaintiff also argues that the release of Coles' right to future personal injury benefits constitutes "a course of conduct that is cruel and shocking to the average man's conscience." (Plaintiff's Br. at 25) Again, the Michigan courts have specifically addressed this argument. In *Lewis*, the court, in rejecting a public policy argument against releases in the context of future

11

benefits under the no-fault statute, held that "the use of a release of future benefits in settlement of a reasonably disputed claim does not constitute a course of conduct which is cruel or shocking to the average man's conception of justice." *Lewis*, 311 N.W.2d at 319.

The record reveals that in settling the 1974 lawsuit, Defendants did not actually concede liability.  This court has no way of knowing whether or not, had the case gone to trial, Defendants would have successfully disputed Coles' claim.  Consequently, the use of the release in settling the claims of the estate of Linda Coles was not a course of conduct shocking to the average man's conception of justice and the release should not be voided on these grounds.

### E.       Authority to Settle the Estate's Claims

Plaintiff further contends that the then co-guardians of Linda Coles' estate were not authorized by the Wayne County Probate Court to finalize a settlement of her claims from the 1974 lawsuit.  We find this argument wholly unconvincing.  Contained in the record is a copy of the Petition For The Appointment of Guardian filed on behalf of Linda Coles in the Wayne County Circuit Court on June 30, 1976.  The petition valued the estate at $500,000.00  The Probate Court issued a letter of authority on July 7, 1976, appointing Nicholas Smith and Security Bank and Trust Company co-guardians of Linda Coles' estate. This letter of authority granted the co-guardians "full power and authority to take possession of and collect, preserve, manage and dispose of all the property of said estate . . . ." (J.A. at 363.)  The letter of authority did not indicate any restrictions. We must therefore agree with the district court's conclusion that  "the letter of authority granted powers to the co-guardians that were sufficiently expansive to include authority for each of them . . . to settle the claims on behalf of Coles estate."  (J.A. at 28.)

12

F.     The Sufficiency of The Bond

Plaintiff lastly cites a local rule of the Wayne County Circuit Court in arguing that the settlement is void based on the assumption that the probate court did not "pass on the sufficiency of the bond." The rule at issue, Local Rule 6.7(d) of the Wayne County Circuit Court of Michigan states:

> In all actions where a minor brings a suit by next friend or guardian and the action is brought before the judge for discontinuance or entry of a consent judgment, it is necessary . . . that where the proposed settlement or judgment is for more than the bond set by the Probate Judge, the settlement may be approved but the judgment shall not be entered until the Probate Judge has passed on the sufficiency of the bond.

As Plaintiff noted, it does appear from the record that $100.00 bond was posted in the Wayne County Probate Court. We agree, however, with Defendant that this Court has no way of establishing whether or not the probate court actually "passed on the sufficiency of the bond." The record does show, however, that the probate court approved the appointment of Nicholas Smith and the Security Bank and Trust Company as co-guardians of the $500,000 estate of Linda Coles. One could therefore just as easily assume that the probate court judge did "pass on the sufficiency of the bond" as not.

Furthermore, Plaintiff does not allege that this issue of not having passed on the sufficiency of the bond would in any way have altered the outcome of the case. Absent case law establishing that a failure to "pass on the sufficiency of the bond" would require voiding the settlement agreement in such circumstances, we do not believe that we should concern ourselves with this issue thirty years after the original lawsuit was settled.

III.

We review the denial of a Rule 60(b) motion under the abuse of discretion standard. *Doe v. Lexington-Fayette Urban County Government*, 407 F.3d 755, 760 (6th Cir. 2005). In order to find an abuse of discretion, this Court must have a definite and firm conviction that the trial court committed a clear error of judgment. *Id.* "Relief under Rule 60(b), moreover, is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Id.* (quoting *Waifersong Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

The district court did not abuse its discretion in denying Plaintiff's Rule 60(b) motion. Plaintiff filed a motion asking the district court to reconsider its grant of Defendant's motion for summary judgment on the basis of newly discovered evidence that was unavailable to her during the summary judgment proceedings. (J.A. at 36.) Plaintiff claims that if the report from Dr. Henderson had been available during the earlier proceedings, then she would have presented it to the Court for review, and that the court as a result would have concluded that the settlement of Coles' claims for $250,000 was manifestly insufficient given that Dr. Henderson opined in his report that Coles would require over $1.3 million for her care. (J.A. at 36.)

In rejecting Plaintiff's argument, the district court stated that the newly discovered report was "neither material nor controlling" and "would not have changed the final disposition of the case." (J.A. at 37.) The district court also noted that Dr. Henderson's report was part of the case file in 1976, but the parties nevertheless knowingly and voluntarily settled the case for the previously discussed amounts. Moreover, the report did not change the court's conclusion that the 1976 settlement was not contrary to public policy.

We believe that the district court's reasons for denying Plaintiff's motion are valid and the district court's denial of Plaintiff's Rule 60(b) motion was not an abuse of discretion.

IV.

For the reasons stated above, we **AFFIRM** the district court's grant of Defendant's motion for summary judgment and denial of Plaintiff's Rule 60(b) motion.